We proceed with our next case, Suzanne Pulk v. David Winter. Good morning, may it please the Court. I'm James Zastrowski. I represent Suzanne Pulk, who is the plaintiff and is now the appellant. I come in a bit late on the case, so she starts out pro se. At the time of the motions, she is represented by counsel. And after the summary judgment was granted, dismissing her two causes of action, she was briefly pro se, and then I was retained. I think this case deserves a closer look than it has received so far. I would note that in a procedure I just haven't seen before, there was just a text order by the district judge, not an actual decision. Obviously, that's his right, but I'm just pointing that out to the Court that really all we have is the magistrate's decision. I think that one of the things that happened... But the text order accepted that. Yes. So it's now the decision of the district court. Do you agree with that? I'm not sure I understand your question, Your Honor. So there were objections. There were numerous objections filed to the magistrate judge's recommended ruling, and the text order you're talking about was by the district court saying, I reviewed those objections, I deny them, and now I accept the magistrate judge's recommended ruling. So that constitutes the ruling of the district court for our purposes. That's correct, Your Honor. I'm just saying that in my perhaps limited experience, I see some attempt by the district judge to grapple with the issues, and that was not done, and the judge has every right to do that, but that's the fact. I think one of the problems with this case, frankly, is that Mr. Colby, who was the trial counsel, is a very formidable litigator, and I think he has done a marvelous job at the trial court and in his briefs to make this case look perhaps like the slam dunk that it really is, and I think it's actually a fairly close and pretty complicated case. So let me get right into... Can I just ask you a question? Yes, sure. In your opponent's brief, they say that your client does not dispute that there was probable cause for her arrest that morning. That's at page 7. Do you agree with that? I think that is actually a very murky issue, which I've been thinking about all morning. I think what counsel perhaps inartfully was trying to say was that if what we believe is the false information provided by Mr. Winter was the sole basis for the arrest, that's false, and I think that there was not really a meeting of the minds. I think Judge McCarthy ends up saying that even without any of the Winter data, that just because Deputy Conley saw some road on an unspecified map, which I can't find on the record, again, I'm coming in late, that there was probable cause independent of what Winter said, and I think what plaintiff's counsel was saying was really different. So I kind of... And given the murkiness, as I pointed out in this court on Monday, the murkiness of the common law in this area, the confusion... Here we have a du chateau. It's my third time in federal court this week trying to convince judges to say that that case should be limited to its facts. It's not really relevant to this case. So given the murkiness of the common law doctrines that plaintiff's counsel was dealing with, I really think that issue's before the court. I really do, and even if it's not... Do I understand correctly that you're saying that we should interpret this concession as meaning no more than that we're not suing the deputies because they didn't do anything wrong? If Mr. Winter had provided true information, and that information was true, then there was probable cause. I think that's fair. Is that the interpretation you want to put on that? I think so, Your Honor. I think that's a fair statement of our position. And then you would be arguing that the correct inquiry is whether there was probable cause, assuming that there was false information from Mr. Winter, that that should be excluded when evaluating Mr. Winter's liability? I think so, Your Honor. But also, perhaps the magistrate did not understand what plaintiff's counsel's position was, but what I'm saying is that without the Winter information, there isn't remotely probable cause. And even if technically it wasn't... The cars were on a portion of the road that were not found to be abandoned, right? The cars were still on a portion of the road that's undisputed that was not on the middle portion, which later the state court found had been abandoned. Well, thank you for asking that question, because the one thing I want to do today is to say that the magistrate did err in relying on Justice Niemeyer's very lengthy, complicated decision that came out after this. Counsel's own brief, which I looked at this morning, the trial court, his trial court brief. If I... Perhaps I haven't located it, but Mr. Colby's summary judgment, excellent brief in the trial court, talks about Judge Niemeyer's decision all over the place and on probable cause. Now, Magistrate McCarthy talks about that decision on page 8 and also implicitly on page 12, note 5, and on page 13. So, Your Honor, the issue you're raising about the lower portion, which was later determined after extremely... But whatever was later determined to be the actual facts about what was public and what was not, didn't Magistrate Judge McCarthy say that there was nothing sufficient to raise a triable issue of fact as to whether Winter learned from the town attorney via an intermediary before the arrest that Rocky Mountain Road was not abandoned? Then he says, well, there is some question as to whether the Mr. Shouse authorized the work. But why does whether he authorized the work matter? Isn't what matters whether Ms. Polk is blocking a public road? And if Mr. Winter was told that this road was not abandoned and he conveyed that information to the deputy, why isn't there probable cause right there regardless of any exaggeration or error or anything else that Mr. Winter said with respect to the town attorney authorized work somewhere? I don't think that... I don't think that Winter did talk to the town attorney. I think he... No, he talked to Ms. Orange, who was a secretary or something. But the finding is that prior to plaintiff's arrest, Winter learned from Mr. Shouse that Rocky Mountain Road was not formally abandoned. With all due respect, that's not my understanding of the record. But I do believe that Judge McCarthy did use Judge Niemeyer's later decision in holding that that was a public road. We're not conceding that at the time of the arrest there's probable cause that that's a public road. There's no marking. There's one photo... Well, you may not be conceding it, but what is the issue of fact as to whether Mr. Winter was told by an intermediary from the town attorney that the road was not abandoned before the arrest? What casts doubt on that and makes that a triable issue of fact? I think that he had... It's my understanding of the record that he indicated that he talked to the town attorney, and I think Your Honor has indicated he talked to a staff member. But the staff member supposedly... I mean, what the finding is, whether he learned from Mr. Shouse via Ms. Orange. I mean, if he says, I'd like to talk to the town attorney, here's the question, and somebody comes back and tells him, I passed your message on to Mr. Shouse, here's what he says. You're saying that it is an actionable falsehood sufficient to give rise to a claim for false arrest that Mr. Winter didn't specify to the deputy that I heard this through an intermediary from the town attorney rather than I spoke to him directly? Well, I think that is a significant difference to talk to... the difference between talking to an attorney... Is it a difference... Does it make a difference as to whether the officer then properly has probable cause to make the arrest based on the information? If he'd been told it was, I called the town attorney, left a message, what I heard back was from the intermediary that the town attorney said it's a public road. You're saying in that... meticulously truthful statement had been made there would not have been probable cause because he needs to have heard it from the very lips of the town attorney? Well, you raise a good question, Your Honor, but as the record stands, Judge McCarthy is saying that the officer did not have to rely on that information at all, and I think that's erroneous because the Deputy Conley's basis for probable cause was an unspecified map. You have a... There is one photo in the evidence, this document 45-7, which shows that this road needed to be mowed. If you look at the factual portions of Judge Niemeyer's decision, he talks about how this is... the middle portion of the road is a wash between mountains and cliffs. This did not, from the record, look like a road at all. So I think that Judge McCarthy did err in making that determination and particularly in relying on the decision of Judge Niemeyer which happened afterwards. And I know counsel's disputing that, but he relies heavily on it on his brief. I know I've reserved time for... Yeah, you have a couple minutes reserved, Mr. Ostrowski. Why don't we hear from Mr. Colby first? May it please the Court, Jeremy Colby from Webster County on behalf of Mr. Winter. First of all, I'd like to thank my learned brother for the kind words. If there's a transcript that I can purchase, I would like to know where I could obtain that. But just segwaying off some of the points that my learned brother made, he said that this case deserves a closer look. I think what plaintiff is really looking for is a series of mulligans. Your Honor asked whether or not plaintiff conceded below the lack of probable cause and even today... The existence of probable cause. I'm sorry? The existence of probable cause. Correct. I'm sorry if I misspoke. Right. That below, the plaintiff conceded that probable cause existed for her arrest. And even here, there's no definitive no. There was, well, it's murky. I'm not sure what plaintiff's, you know, what counsel is arguing there. So even now, we have no definitive no. Ms. Polk had an opportunity to file a reply brief and she did not do so either. So again, I think it's... That was in her memorandum of law? Correct. Page 9 for her memorandum of law which is docket number 45-11, I believe, Your Honor. I take it that's not part of the appendix. It's not. The document is not part of the appendix. It's cited to in the R&R. As I understand it, the entire docket is available to the court. I just wanted to make sure I haven't got it here. I have the appendix here. There's no point in my looking through it to find that concern. That's correct, Your Honor. Yes. Thank you. So again, she conceded below that probable cause existed but even if the court were to allow her to revisit that issue, you know, she's unable to satisfy the, you know, the showings that they need to satisfy. First of all, you know, a lot of discussion has been had with respect to what was said, to whom, and the whole series of conversations between Mr. Winter and Ms. Orange who was the town clerk and then the town attorney who was taking his daughter off to college. But frankly, as the court found here, the only statement from Winter that is germane whatsoever to the probable cause determination is the fact that he said town vehicles need to get over there to do some work. And she had her vehicles parked in a section of the road. And again, counsel argues that well, Judge McCarthy erred by relying on Judge Niemeyer's decision. I don't think that's an accurate reading and that's not what we had argued below either. The deputies, based on their own personal information, they testified that based on review of maps and GPS that this was a public road and we knew it to be a public road. Judge Niemeyer's decision, however, just confirmed that in fact, after the issue was litigated, the State Supreme Court ruled that this section of road where she had her cars parked was in fact a public road. So... What is the status of existence of probable cause for arrest and its connection to the abusive process here? It seems as if the process that this claimed to be abused was Mr. Winter's subsequent statement that he had spoken to the town attorney that it was a declaration.  of probable cause for the initial arrest and the abusive process cause of action in New York? Well, in New York, as we've outlined before, there are we've outlined in our briefs that probable cause also defeats an abusive process claim. The R&R found that it was unclear in the Second Circuit and you know, I, we cited a number of cases in our brief decided by this court, one of which was an unpublished decision, but that other courts, district courts have cited for the proposition that probable cause, the existence of probable cause is in fact defeats a claim for abusive process, but regardless, even if you were to find that it remains an open issue in the circuit, the R&R or Judge McCarthy's alternate ruling was that, okay, if it is an open question, then you are, Mr. Winter is at least entitled to qualified immunity. I don't know if that was answering your question. Okay. And also, and I think you also mentioned there the fact that Mr. Winter had supplied a supporting deposition, which Usually the qualified immunity is for the arresting police officer. Winter is the highway supervisor, highway engineer. It is a bit of a hybrid It's a little odd here that you would give qualified immunity to him in that position rather than to an arresting officer, and it's the accusation is he provided the false document. How does he benefit from qualified immunity under those circumstances? I think Your Honor raises a good point that the typical scenario is whether or not the arresting officer is based on the uncertain information at the scene of the arrest should be entitled to qualified immunity. So here as a complaining witness, again, I think it's almost speculative I think for me to try and get into Mr. Winters' head at the scene and in fact I don't even think the record shows he wasn't even at the scene he ran into an officer on the road and said by the way we need to get our vehicles past the blockade so I guess I would concede that it is at least unclear as to whether or not the application of qualified immunity would apply here as Judge McCarthy indicated. Nonetheless there are a number of obstacles that I think plaintiff has to overcome which they failed to overcome before you would even get to that. I think that is a very tertiary argument in the R&R. Also with respect to I think you had asked about the legal process and the supporting deposition we cited a number of cases that hold that where you have a warrantless arrest there is no abusive process claim that can be had you have to have a warrant issued something the legal process The abuse of legal process claim depends on the idea that you are using a legal document a subpoena a warrant or something like that maliciously for some ulterior purpose other than the purpose for which it was issued. Is that wrong? No that's correct your honor but here there is no process That's your argument right that there is no use of regularly issued legal process at all and certainly not to obtain some collateral objective the objective is Mr. Winters objective was exactly what he said get the trucks off the road it's not for some reason other than legitimate reasons there is no allegation here that he didn't like Ms. Polk and so he wanted to get her in trouble and so he concocted something in order to get a legal document to be misused for the wrong purpose Not that I'm aware of although I'm sure that they don't have much love lost for each other as of today that said How does the system work in New York then? Why did they need a declaration from him the next day? Connelly makes the arrest on the side after she refuses to move the trucks the vehicles and the next day he goes in and swears his declaration How does that work in the New York courts? What's the reason for the declaration? It was a supporting deposition and it was just in support of the complaint I don't know why they didn't get it at the night Criminal  was filed and she appeared before a town justice Correct Criminal complaint followed the on-site arrest That's the way it works If I understand it correctly she was arrested at the scene they took her to county sheriff's deputies took her to see a town justice They couldn't locate a town justice so they gave her an appearance ticket the following day they went to the   deputies and she appeared in support of the criminal complaint that was signed by the deputies Are there any other questions that the panel has? I have short time I want to make sure I answer anything that you may have If I may look through my notes quick to see if I have anything Thank you very much That's all Thank you very much Mr. Ostrowski you have a couple minutes Just a couple of minutes to answer a couple of questions that you  have Mr. Ostrowski you have a couple of minutes to answer a couple of questions that you may have Mr. Ostrowski you have    to answer you have to answer a have to answer a couple